## Case No. 5,974.

### In re HAMBURGER et al.

#### [8 Ben. 189.] 1

District Court, S. D. New York. July, 1875.

COUNSEL FEES — ASSIGNEE'S DISBURSEMENTS — SERVICES RENDERED BEFORE THE ASSIGNEE WAS CHOSEN.

At the time an assignee in bankruptcy was elected, suits were pending against the bankrupts, in which suits counsel employed by the bankrupts had rendered services. Such counsel afterwards presented to the assignee, to be paid out of the estate, a bill for services, which the assignee paid, and he claimed to be allowed for the amount in his accounts as assignee. All the services were either rendered before the assignee was elected, or it did not appear that they were rendered under employment by the assignee: *Held,* that, under general order No. 30, no allowance could be made to the assignee for the fees of counsel for the services in question, although such services were more or less beneficial to the creditors and the assignee, and were services proper and necessary to be rendered, on the procurement of the bankrupts.

[See note at end of case.]

In this matter, a bill of fees for services and disbursements of counsel in various actions which were pending in the courts of the state against the bankrupts [Max Hamburger and Berthold Frankel] at the time of the election of the assignee, had been presented to the assignee and paid by him. The question of the allowance of the bill was referred to the register, who reported in favor of the allowance of the bill, and the report was presented to the court for approval.

Marks & Russell, in person.
W. F. Scott, for the assignee.

BLATCHFORD, District Judge. The terms of general order No. 30 must govern the question. It declares that "no allowance shall be made against the estate of the bankrupt for fees of attorneys, solicitors or counsel, except when necessarily employed by the assignee, when the same may be allowed as a disbursement." The principle adopted by the register is, that the services for which he thinks an allowance should be made were more or less beneficial to the creditors and the assignee, and were services proper and necessary to be rendered, on the procurement of the bankrupts. This would be a very proper consideration were it not for the express language of general order No. 30, which was manifestly intended to exclude the exercise of all discretion by the court in cases of this kind. The assignee was not elected till January 18th, 1875, and the papers do not show that the assignee gave any instructions to the counsel who make this claim, in regard to any pending suit, so as to warrant the court in considering that the assignee employed such counsel, until the 8th of February, 1875. The register reports that the counsel "were directed by the counsel for

the assignee to continue such of said suits as were pending at the time of the appointment of said assignee." The testimony to which he refers to support this view, is the evidence of Mr. Marks; but that evidence only states that the counsel were instructed to continue the defence in one action—that brought by Smith. This instruction, according to the papers, was given February 8th, 1875. All of the services for which the register has allowed, except those in the action by Smith, were either rendered before the assignee was elected, or it is not shown that they were rendered under employment by the assignee. The services in the action by Smith were all of them rendered prior to February 8th, 1875.

I do not see on what principle the $20.80 paid as a disbursement in a suit in the state court, in September, 1874, can be allowed. The $122.35, paid as disbursements in the bankruptcy proceedings, is allowed. with the costs of the reference.

[In Re Hamburger, Case No. 5,971. Blatchford, District Judge, defined the proper charges of a register under general order No. 30. The same judge also held (Case No. 5,975) that the assigned estate was liable for reasonable rent for premises occupied by the assignee.]

## Case No. 5,975.

### In re HAMBURGER et al.

#### [12 N. B. R. 277; 1 N. Y. Wkly. Dig. 53.] 1

District Court, S. D. New York. 1875.

BANKRUPTCY—RENT.

If the officers of the court keep possession of the premises the landlord is entitled to a reasonable compensation for the time that they are so occupied.

[Cited in Re Ives, Case No. 7,116; Re Secor, 18 Fed. 320.]

By the Register:

This cause is pending before me, at the chambers of this court, by an order, dated the 27th day of March, 1875, "to inquire on proofs and report what is a proper amount, if any, to be paid out of the assets of the estate for the use and occupation of the said premises by any officer of the court, or by the assignee, since the petition in bankruptcy was filed." I do hereby certify and report that the petitioners and the assignee have appeared before me: That the facts as appears from the testimony before me taken on this trial, and the proceedings in the matter, are as follows: The above-named bankrupts [Max Hamburger and Berthold Frankel] on the 10th day of August, 1874, filed a petition for an adjudication in bankruptcy of themselves, and were duly adjudged bankrupts the same day, and thereupon surrendered to me their estate and effects, consisting in part of pictures, picture-frames.

---

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

1 [Reprinted from 12 N. B. R. 277. by permission. 1 N. Y. Wkly. Dig. 53. contains only a partial report.]

mouldings, machinery, etc., situated on the third and fourth lofts of the premises, Nos. 18 and 20 Vesey street, in the city of New York, which remained in my possession until on or about the 18th day of February, 1875, when an assignee was appointed. That the assignee subsequently sold said property, and on the 15th day of March, 1875, delivered the keys of said premises to the petitioners, the landlords of said premises, from whom the said bankrupts held a lease of said premises at a yearly rental of one thousand eight hundred dollars, which said lease is hereunto annexed. That the said bankrupts sought to effect a compromise with their creditors, under the provisions of section 5103a of the Revised Statutes, which was accepted by their creditors at a meeting held for that purpose on the 2d day of October, 1874, and afterwards duly ratified by the required number and value of their creditors, and subsequently approved by this honorable court, but by reason of the failure of the bankrupts to procure the indorsement of their composition paper by the person relied upon and mentioned by them, at the said composition meeting, the terms of said composition were not carried out. That the order for the first meeting on composition is dated the 12th day of September, 1874, and the second report on composition was filed in the office of the clerk of this court on the 26th day of November, 1875. That pending said proceedings, the petitioners applied to the attorneys for the bankrupts a number of times for possession of said premises, by whom they were told the bankrupts would certainly effect a compromise with their creditors, and they would then pay the rent and remove the goods. That the petitioners also demanded possession of said premises from the undersigned, by whom they were told "that they would have to proceed in the state courts to dispossess him," that is, the register, and that he, the register, "did not know but that this court would enjoin the petitioners from putting the goods on the sidewalk." That no formal proceedings were taken by the petitioners to get possession of the said premises until after the failure of the bankrupts to carry out the terms of the said composition, when they applied to this court by petition dated the 11th day of December, 1874, praying "for an order directing me, the said register, to sell said property stored in said lofts, as aforesaid, according to the rules and practice of this court." That said petition was referred to the undersigned, by an order of this court, dated the 6th day of January, 1875, to take proofs and report to this court what ought to be done in the matter. That several witnesses were examined under said order, but before the testimony was completed, the bankrupts applied to the undersigned for a warrant for the first meeting of creditors for the purpose of electing an assignee, whereupon the petitioners suspended further proceedings under the said order, and the undersigned as register and the assignee of said bankrupts retained successively undisturbed possession of said premises until the 15th day of March, 1875, when the keys thereof were surrendered to the petitioners by the said assignee. That the testimony taken under the order of January 6th, 1875, is herewith returned as a part of these proceedings, it having been offered in evidence by the attorney for the assignee. That no agreement was entered into by the undersigned, or the assignee herein, with the petitioners, as to what rent should be paid for said premises while occupied by them in their respective capacities as register and assignee. A witness as an expert testifies that the said premises were and are worth the sum of one thousand six hundred dollars per annum, whether used for manufacturing purposes or merely for storage. That he never had occasion to collect rent from a tenant holding without an agreement.

The facts in the case are in no wise analogous to those in the cases cited by the counsel for the assignee in his brief, which is herewith submitted. In this case the landlords have from the time of the bankruptcy acted the part of just, honest, and honorable men, in every way, aiding the bankrupts to continue their business, and the creditors to obtain the percentage originally agreed upon. The refusal by the person named by the bankrupts, to indorse their composition notes, was not their fault; they waited patiently for the bankrupts to fulfill their agreement and to carry out the composition sanctioned by this court. That it could not be done was the bankrupts' misfortune, and not the fault of the landlords. The fault was in the over-estimate and exaggerated value put by the bankrupts upon their property and business. My experience has taught me that such is the fault common to all bankrupts. But for such a fault the landlords cannot, neither should they be punished by depriving them of a fair and just compensation for the use and occupation of their premises. Bankruptcy, like death, is the end of all things; contracts as well as all other things cease and end by an adjudication. In this case, the lease terminated with the bankruptcy, after which the landlord must apply to the court, as per practice, and must prove the value of the premises so occupied. This they have done, and the amount is not controverted nor disputed by the assignee. The court has had possession of the premises. To have removed the property and rented other premises would have been much more expensive, and entailed a much larger sum upon the estate than the amount claimed by the landlords. The retention of the premises has been for the best interest of the creditors. Equity and good conscience requires that the landlords should be fairly and justly dealt with. It is to be expected that assignees will be

cautious and resist all claims they deem doubtful; but the court should see that equal and exact justice was done as between all parties. This is clearly intended by the wording of the order of reference in this case. The testimony shows the value of the premises to be from one thousand six hundred to one thousand eight hundred dollars per annum, which is a reasonable·sum to be paid therefor by the estate. It is apparent that the premises were worth that sum to the estate. The court, by operation of law through its officers, becoming the occupant and deriving title by operation of the bankrupt act [of 1867 (14 Stat. 517)], succeeds to all the rights and some of the liabilities of the bankrupts, especially those liabilities incurred in the preservation of the estate, as was done in this case. The landlords only claim the actual value of the use of the premises, nothing more.

I do not consider the decision in the case of McGrath [Case No. 8,808], as an adverse decision. The application for the order of reference to fix the amount due the landlords was the correct course to be pursued, and the finding of the court fixes the rate at which the landlords as well as the assignee must be bound, as the measure of compensation for the use and occupation of the premises. The landlords did not apply to the court for the possession of the property, nor to have a fixed and definite amount of rent agreed upon, but did consent to the occupation of the premises by the estate, and can therefore only be allowed for the use and occupation of the premises what they were worth, be it more or less than the sum named in the lease. The adjudication in bankruptcy canceled the lease, and if the landlords desired the immediate possession of the premises, or the payment of the rent as named in the lease, they should have applied to the court for the one or the other. Not having done so they can only have the value of the premises allowed them. In re Metz [Id. 9,509].

The testimony uncontradicted varies from one thousand six hundred to one thousand eight hundred dollars per annum. It has been the uniform practice, and I deem it the correct one, that the claimant pay the fees of the referee upon the making up of the report. In this case let the register's fees be a charge upon the estate in the hands of the assignee. I find, and do hereby so report, that the sum of nine hundred and fifty-five dollars and fifty-four cents is due the claimant for the rent of said premises, while the same were occupied by the officers of this court, to wit: from the 10th day of August, 1874, until the 15th day of March, 1875, being seven and one-sixth months at one hundred and thirty-three dollars and thirty-three and one-third cents per month, or one thousand six hundred dollars per annum, and respectfully recommend that an order be entered herein empowering and directing the assignee herein to pay the same out of the funds in his hands belonging to the estate.

BLATCHFORD, District Judge. Let an order be entered in accordance with the decision of the register.

[See Cases Nos. 5,971 and 5,974.]

## Case No. 5,976.

### In re HAMILTON.

[1 Ben. 455.] [1]

District Court, S. D. New York.   Oct., 1867.

HABEAS CORPUS AD TESTIFICANDUM—MILITARY DESERTER—PERSONAL IDENTITY.

1. Where a person, confined in prison in Philadelphia, was brought to this state in charge of an officer, under a writ of habeas corpus ad testificandum, issued out of this court, and, after his arrival here, applied to a state court and obtained a writ of habeas corpus, under the operation of which he was discharged by the state court from the custody of the officer, who returned to Philadelphia without him, *held*, that, as he was brought from Philadelphia under the writ issued by this court, and was still actually present before this court, he was still under its control, and must be sent back to the place from which he was brought for the purpose of testifying, and that, as his proper guardian had left him, he must be returned there by the marshal of this district.

2. Where a person, arrested as a deserter from the military service, was brought up under a writ of habeas corpus issued by this court, and the military authorities made return that he was regularly enlisted into the military service of the United States, which return the petitioner traversed, and, on the traverse, evidence was taken as to the identity of the petitioner with the person enlisted, *held*, that, on the proofs, the petitioner was the person enlisted, and that, as he was regularly enlisted, he must be remanded.

This case came before the court on a writ of habeas corpus, issued at the request of the petitioner [William L. Hamilton]. to procure his discharge from the military service of the United States. The return to the writ showed that he had been legally enlisted, and was held as a deserter. This return was traversed by the petitioner, and testimony was taken at considerable length before a United States commissioner, upon the issues raised by the traverse. Upon this testimony, and some oral testimony, given by the petitioner himself in court, the case was argued. In the course of the proceedings a collateral matter arose, which was first disposed of by the court. This matter arose out of the following facts: Before the issuing of this writ, Hamilton, being in Philadelphia, was arrested by the military authorities there as a deserter, and was by them sent to Governor's Island, New York, to be tried for desertion. On his application, however, before he left Philadelphia, a writ of habeas corpus in his favor had been issued out of one of the state courts. This writ was directed to one Captain Brown, who had had Hamilton in charge after his arrest.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]